UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JOSE ZABALA,

    Plaintiff,

v.                                      Case No:   8:16-cv-326-T-DNF

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____

## OPINION AND ORDER

Plaintiff, Jose Zabala, seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying his claim for a period of disability and Disability Insurance Benefits ("DIB"). The Commissioner filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number), and the parties filed a Joint Memorandum (Doc. 19) setting forth their respective positions. For the reasons set out herein, the decision of the Commissioner is **REVERSED AND REMANDED** pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

    **I.    Social Security Act Eligibility, Standard of Review, Procedural History, and the ALJ's Decision**

        **A. Social Security Act Eligibility**

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905. The impairment must be severe, making the claimant unable to do his previous work, or any other

substantial gainful activity which exists in the national economy. 42 U.S.C. §§ 423(d)(2), 1382(a)(3); 20 C.F.R. §§ 404.1505-404.1511, 416.905-416.911.

**B. Standard of Review**

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405 (g). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate support to a conclusion. Even if the evidence preponderated against the Commissioner's findings, we must affirm if the decision reached is supported by substantial evidence." *Crawford v. Comm'r*, 363 F.3d 1155, 1158 (11th Cir. 2004) (citing *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997)); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). In conducting this review, this Court may not reweigh the evidence or substitute its judgment for that of the ALJ, but must consider the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Martin v. Sullivan*, 894 F.2d 1329, 1330 (11th Cir. 2002); *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995). However, the District Court will reverse the Commissioner's decision on plenary review if the decision applied incorrect law, or if the decision fails to provide sufficient reasoning to determine that the Commissioner properly applied the law. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994). The Court reviews de novo the conclusions of law made by the Commissioner of Social Security in a disability benefits case. Social Security Act, § 205(g), 42 U.S.C. § 405(g).

The ALJ must follow five steps in evaluating a claim of disability. 20 C.F.R. §§ 404.1520, 416.920. At step one, the claimant must prove that he is not undertaking substantial gainful employment. *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001), *see* 20 C.F.R. §

404.1520(a)(4)(i). If a claimant is engaging in any substantial gainful activity, he will be found not disabled. 20 C.F.R. § 404.1520(a)(4)(i).

At step two, the claimant must prove that he is suffering from a severe impairment or combination of impairments. *Doughty*, 245 F.3d at 1278, 20 C.F.R. § 1520(a)(4)(ii). If the claimant's impairment or combination of impairments does not significantly limit his physical or mental ability to do basic work activities, the ALJ will find that the impairment is not severe, and the claimant will be found not disabled. 20 C.F.R. § 1520(c).

At step three, the claimant must prove that his impairment meets or equals one of impairments listed in 20 C.F.R. Pt. 404, Subpt. P. App. 1; *Doughty*, 245 F.3d at 1278; 20 C.F.R. § 1520(a)(4)(iii). If he meets this burden, he will be considered disabled without consideration of age, education and work experience. *Doughty*, 245 F.3d at 1278.

At step four, if the claimant cannot prove that his impairment meets or equals one of the impairments listed in Appendix 1, he must prove that his impairment prevents him from performing his past relevant work. *Id*. At this step, the ALJ will consider the claimant's RFC and compare it with the physical and mental demands of his past relevant work. 20 C.F.R. § 1520(a)(4)(iv), 20 C.F.R. § 1520(f). If the claimant can still perform his past relevant work, then he will not be found disabled. *Id*.

At step five, the burden shifts to the Commissioner to prove that the claimant is capable of performing other work available in the national economy, considering the claimant's RFC, age, education, and past work experience. *Doughty*, 245 F.3d at 1278; 20 C.F.R. § 1520(a)(4)(v). If the claimant is capable of performing other work, he will be found not disabled. *Id*. In determining whether the Commissioner has met this burden, the ALJ must develop a full and fair record regarding the vocational opportunities available to the claimant. *Allen v. Sullivan*, 880 F.2d 1200,

1201 (11th Cir. 1989). There are two ways in which the ALJ may make this determination. The first is by applying the Medical Vocational Guidelines ("the Grids"), and the second is by the use of a vocational expert. *Phillips v. Barnhart*, 357 F.3d 1232, 1239 (11th Cir. 2004). Only after the Commissioner meets this burden does the burden shift back to the claimant to show that he is not capable of performing the "other work" as set forth by the Commissioner. *Doughty v. Apfel*, 245 F.3d 1274, 1278 n.2 (11th Cir. 2001).

**C. Procedural History**

Plaintiff filed an application for a period of disability and DIB on July 30, 2012, alleging a disability onset date of June 28, 2012. (Tr. 169-75). Plaintiff's application was denied initially on September 11, 2012, and upon reconsideration on November 5, 2012. (Tr. 114-18, 121-25). Plaintiff requested a hearing and, on February 13, 2014, an administrative hearing was held before Administrative Law Judge Kurt G.W. Ehrman ("the ALJ"). (Tr. 56-89). On May 2, 2014, the ALJ entered a decision finding that Plaintiff was not under a disability from June 28, 2012, through the date of the decision. (Tr. 41-55). Plaintiff filed a request for review which the Appeals Council denied on December 16, 2015. (Tr. 1-7). Plaintiff initiated this action by filing a Complaint (Doc. 1) on February 11, 2016.

**D. Summary of the ALJ's Decision**

At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since June 28, 2012, the alleged onset date. (Tr. 43). At step two, the ALJ found that Plaintiff had the following severe impairments: neurocardiogenic syncope status-post pacemaker, also assessed as polymyositis; headaches due to prior Depakote medication; hypertension with occasional chest pain. (Tr. 43). At step three, the ALJ found that Plaintiff did

not have an impairment or combination of impairments that meets or medically equals the severity of any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 44).

Before proceeding to step four, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to

> perform light work as defined in 20 CFR 404.1567(b) except the claimant can lift 20 pounds occasionally and lift and carry 10 pounds frequently; stand and/or walk about 6 hours and sit for at least 6 hours in an 8-hour workday, with normal breaks; he should avoid climbing ladders, ropes, and scaffolds; can occasionally climb ramps or stairs, balance, stoop, kneel, crouch and crawl. The claimant should avoid concentrated exposure to extreme cold, extreme heat, excessive noise and excessive vibration, and he should avoid all use of hazardous industrial machinery and unprotected heights. The claimant should not operate a motorized vehicle.

(Tr. 44). At step four, the ALJ found that Plaintiff is not capable of performing his past relevant work as a quarry supervisor. (Tr. 47-48).

At step five, the ALJ relied on the testimony of a vocational expert to find that considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that the Plaintiff can perform. (Tr. 48). Specifically, the ALJ found that Plaintiff could perform the occupations of cleaner, cashier, and fast food worker. (Tr. 49). The ALJ concluded that Plaintiff had not been a disability from June 28, 2012, through the date of the decision, May 2, 2014. (Tr. 49).

## II. Analysis

Plaintiff raises three issues on appeal. As set forth in the Joint Memorandum, they are: (1) whether the ALJ properly considered the opinion of Dr. Matthew McKillop, Plaintiff's treating cardiologist and the findings of Dr. Annoni and Dr. Ramireddy; (2) whether the ALJ's credibility and RFC finding was supported by substantial evidence; and (3) whether the ALJ posed a

hypothetical question to the VE which accurately and comprehensively described the combination of all of Plaintiff's impairments. The Court begins with the Plaintiff's first issue.

Plaintiff argues that although the ALJ gave "significant weight" to the opinion of treating physician Dr. McKillop, the ALJ erred by failing to consider the entirety of Dr. McKillop's opinion. (Doc. 19 p. 14). Specifically, Plaintiff contends that the ALJ only addressed a small portion of Dr. McKillop's opinion that pertained to Plaintiff's ability to sit, stand, and walk, and the ALJ improperly ignored the rest. (Doc. 19 p. 14). In addition, Plaintiff argues that the ALJ's discussion of the treatment notes from Dr. Annoni and Dr. Remireddy do not constitute meaningful consideration. (Doc. 19 p. 16). According to Plaintiff, the ALJ failed to discuss the portions of Dr. Annoni and Dr. Remireddy's treatment notes that supports Plaintiff's claim that his symptoms are disabling. (Doc. 19 p. 16-17).

Defendant argues that the ALJ properly considered the records and opinions of the doctors who treated or examined Plaintiff and who reviewed the record during the relevant period. (Doc. 19 p. 20). Defendant argues that even if the ALJ failed to adopt some of the more specific limitations opined by Dr. McKillop, the ALJ clearly discussed all of his opined limitations in the decision, so any limitation not found in the RFC were implicitly rejected by the ALJ. (Doc. 19 p. 22). Defendant contends that the other evidence of record supports the ALJ's RFC finding. (Doc. 19 p. 23).

The record shows that on June 8, 2013, Plaintiff went to Shand's Medical Center Neurocardiogenic Clinic to be evaluated by Matthew McKillop, M.D., a cardiologist with the University of Florida Electrophysiology section. (Tr. 627-634). At this initial evaluation, Plaintiff reported that one year ago he became lightheaded with numbness and tingling while on a boat. This improved with sitting but after he stood up he passed out and does not remember falling or

hitting the ground. "Since then, he has had nearly daily episodes of similar but less severe symptoms. He has not passed out as he sits when he has his symptoms". (Tr. 628). Dr. McKillop performed a physical exam and a pacemaker/device interrogation, making changes to his pacemaker settings. (Tr. 630). His assessment was that Plaintiff continued to have neurocardiogenic recurrent syncope, hypertension and headaches which has been refractory to medications and to pacemaker implantation. Dr. McKillop also diagnosed paroxysmal aortic fibrillation or "A-Fib" because his pacemaker interrogation noted 35 mode switch episodes and his EMG report was consistent with A-Fib. (Tr. 630-631). Dr. McKillop started Plaintiff on an increased 15 mg Midropine daily and ordered compression stockings to improve venous return. He discontinued Florinef and weaned him off Clonidine, his blood pressure medication. Dr. McKillop felt Clonidine may be exacerbating Plaintiff's problems, and felt allowing some hypertension may decrease his symptoms. He was advised to take a baby aspirin for his A-Fib given his low CHADS 2 score. (Tr. 631).

Plaintiff returned to Dr. McKillop on August 7, 2013 for pacemaker interrogation. (Tr. 654-684). Plaintiff told Dr. McKillop he had some "mild improvement in his symptoms, however he still describes orthostasis and dizziness which requires him to lay down and put his legs up". (Tr. 654). Dr. McKillop also notes that Plaintiff has never had a syncopal episode only because he stops what he is doing and lays down. (Tr. 654). Plaintiff was pursuing the possibility of returning to work and asked Dr. McKillop to write a letter clearing him for light work duty. (Tr. 654, 656).

On February 9, 2014, Plaintiff's treating cardiologist, Matthew McKillop, M.D., completed a cardiac arrhythmia medical assessment form. (Tr. 686-88). Dr. McKillop found that Plaintiff exhibited episodes of arrhythmia with such symptoms as shortness of breath, syncope, palpitation, nausea, and dizziness. Dr. McKillop provided that these episodes occur several times a week but less often than

daily. Dr. McKillop opined Plaintiff would have to rest for two hours after an episode. Dr. McKillop found that Plaintiff's symptoms rarely interfere with the attention and concentration needed to perform even simple work tasks during a typical workday. Dr. McKillop found that if Plaintiff was placed in a competitive job, he would be unable to perform fast paced tasks and be exposed to work hazards (e.g. heights or moving machinery). Dr. McKillop found that Plaintiff's impairments last or can be expected to last at least twelve months. Dr. McKillop found that Plaintiff can walk without rest or severe pain for five blocks, can continuously sit or stand at one time for more than 2 hours, and can sit, stand or walk for a total of six hours in an eight hour workday. Dr. McKillop found that Plaintiff would sometimes need to take unscheduled breaks three times during an average workday and Plaintiff will have to rest for more than two hours before returning to work. These breaks are caused by Plaintiff's symptoms of palpitations and weakness. Dr. McKillop indicated that Plaintiff's legs would have to be elevated above the level of his heart during prolonged sitting. Dr. McKillop found that if Plaintiff had a sedentary job, he legs would have to be elevated 50% during an eight hour work day. Dr. McKillop found that Plaintiff would need to elevate his legs due to edema and lightheadedness. Dr. McKillop found that Plaintiff can frequently lift and carry less than ten pounds, occasionally lift and carry ten pounds, and never lift and carry twenty or fifty pounds. Dr. McKillop found that Plaintiff can occasionally twist and rarely bend. Dr. McKillop estimated that Plaintiff would be absent from work about four days a month due to her impairments.

In his opinion, the ALJ addressed Dr. McKillop's opinions as follows:

> As for the opinion evidence, on August 7, 2013, Dr. Mckillop from the University of Florida Cardiology Department opined that from a cardiac standpoint there was no objective evidence to preclude the claimant from light work (Exhibit 28F). Furthermore, on February 19, 2014, the physician found that the claimant could continuously sit and stand more than two hours. He was able to sit, stand, or walk at least 6-hours in an 8-hour workday (Exhibit 29F). I afford this opinion significant weight as it was consistent with the medical evidence. The record revealed excellent exercise capacity, no exercise induced chest pain and no significant arrhythmia (Exhibits3F). In addition, the claimant himself reported no

> episodes since April 2013. Therefore, it is reasonable that the claimant could perform a range of light work. However, the opinion that the claimant would require 3 unscheduled breaks lasting more than 2 hours was given little weight because it is not supported by the medical evidence (Exhibit 29F). Notation of January 29, 2014 at Exhibit 27F:2 show that the syncope episodes ended in April 2013, a December 2013 EEG was negative as were March 27, 2013 and June 25, 2013 examinations (25F, 26F). Notation was made in January 2013 that the claimant was "much improved" with Florinef and Meclizine medication. (14F).

(Tr. 47).

"The Secretary must specify what weight is given to a treating physician's opinion and any reason for giving it no weight, and failure to do so is reversible error." *MacGregor v. Bowen,* 786 F.2d 1050, 1053 (11th Cir. 1986) (citation omitted). The Eleventh Circuit has held that whenever a physician offers a statement reflecting judgments about the nature and severity of a claimant's impairments, including symptoms, diagnosis, and prognosis, what the claimant can still do despite his or her impairments, and the claimant's physical and mental restrictions, the statement is an opinion requiring the ALJ to state with particularity the weight given to it and the reasons therefor. *Winschel v. Comm'r of Social Security,* 631 F3d 1176, 1178-79 (11th Cir. 2011). Without such a statement, "it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence." *Id.* (citing *Cowart v. Shweiker,* 662 F.2d 731, 735 (11th Cir. 1981)).

The opinions of treating physicians are entitled to substantial or considerable weight unless good cause is shown to the contrary. *Phillips v. Barnhart,* 357 F.3d 1232, 1240 (11th Cir. 2004). The Eleventh Circuit has held that good cause exists when the: "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Id.* Where an ALJ articulates specific reasons for failing to accord the opinion of a treating or

examining physician controlling weight and those reasons are supported by substantial evidence, there is no reversible error. *Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005).

In this case, the Court finds that the ALJ erred in his analysis of the opinion of Dr. McKillop. As a treating physician, Dr. McKillop's opinion was entitled to substantial or considerable weight unless good cause was shown to the contrary. While the ALJ did accord significant weight to a portion of Dr. McKillop's opinion, the ALJ did not sufficiently discuss nor provide good cause for rejecting the remainder of the opinion, with the exception of Dr. McKillop's opinion that Plaintiff needed three unscheduled breaks every two hours. (Tr. 47). The ALJ failed to sufficiently address Dr. McKillop's opinion that Plaintiff had symptoms of shortness of breath, syncope, palpitations, nausea, and dizziness several times a week, which lasted for 12-24 hours; that Plaintiff was unable to perform fast paced tasks such as production lines; and that Plaintiff can only walk 5 city blocks without rest or severe pain. The ALJ did not discuss Dr. McKillop's opinion that Plaintiff can lift less than 10 pounds frequently, 10 pounds occasionally, and never 20 pounds, which is in direct conflict with the ALJ's RFC finding that Plaintiff is capable lifting 20 pounds occasionally and 10 pounds frequently. (Tr. 688).

The Court rejects Defendant's argument that the ALJ implicitly rejected those portions of Dr. McKillop's opinion that were not contained in the ALJ's ultimate RFC finding. *See* (Doc. 19 p. 22). The ALJ failed to even mention parts of the opinion which were in direct conflict with his RFC determination. To find that the ALJ "implicitly" rejected portions of a treating physician's opinion would be to undermine *Winschel*'s requirement that an ALJ must state with particularity the weight given to an opinion.

On remand, the Court will require the ALJ to re-evaluate the medical evidence from Dr. McKillop and state the weight accorded to each portion of his opinions. As this case is already

being remanded, the Court will also have the ALJ re-evaluate the medical evidence from Drs. Annoni and Ramireddy and provide a more thorough analysis as to how this evidence was considered.

Because the ALJ's re-evaluation of the medical opinion evidence may alter the ALJ's decision, the Court will defer at this time from considering Plaintiff's remaining arguments that the ALJ erred by improperly considering Plaintiff's credibility and that the ALJ erred by posing an incomplete hypothetical to the vocational expert.

**III.  Conclusion**

The decision of the Commissioner is **REVERSED AND REMANDED**. The Clerk of the Court is directed to enter judgment consistent with this opinion and, thereafter, to close the file.

**DONE** and **ORDERED** in Fort Myers, Florida on June 28, 2017.

*[signature]*
DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties